IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **ATLANTIC FOREST PRODUCTS LLC** * <br> **240 West Dickman Street** <br> **Baltimore, Maryland 21230** * <br>     **Plaintiff** * <br> **v.** * <br> **WM. M. YOUNG CO., LLC** * <br>  **19 Davidson Lane** <br> **New Castle, Delaware  19720** * <br> * <br> **THOMAS SHEA, JR.** <br> **307 Center Meeting Road** * <br> **Wilmington, Delaware 19807** <br> * <br> **TYSON BRUMFELD** <br> **6 Hanson Lane** * <br> **Hockessin, Delaware 19707** <br> * <br> **KEVIN DORAN** <br> **624 Jenkins Lane** * <br> **North Wales, Pennsylvania  19454** <br> * <br>     **Defendants.** <br> *   *   *   *   *   *   *   *   *   *   *   * | **CASE NO. 1:11-CV-00241-RDB** |

**FIRST AMENDED COMPLAINT**

Plaintiff Atlantic Forest Products LLC ("Atlantic Forest"), by its undersigned counsel and pursuant to Fed. R. Civ. P. 3 and 15, sues Wm. M. Young Co. LLC ("Young"), Thomas Shea, Jr., Tyson Brumfield, and Kevin Doran (collectively, "Defendants").  For its Amended Complaint against Defendants, Atlantic Forest states as follows.

## PARTIES

1. Atlantic Forest is a limited liability company formed under the laws of the State of Maryland, with its principal place of business in Baltimore City, Maryland.

2. Atlantic Forest is a wholesale distributor of lumber and related products, and a seller of lumber to Young.

3. Young is a limited liability company formed under the laws of the State of Delaware, with its principal place of business in New Castle County, Delaware.

4. Young is, or was, a wholesale lumber distributor and a customer of Atlantic Forest.

5. Young was, at all times relevant hereto, registered with the State Department of Assessments and Taxation to do business in Maryland.

6. Upon information and belief, at all times relevant hereto, Young bought and sold lumber from and to vendors and customers located in Maryland.

7. Thomas Shea, Jr. is an adult resident of Delaware, and the Chief Executive Officer of Young.

8. Tyson Brumfield is an adult resident of Delaware, and the Vice President of Young.

9. Kevin Doran is an adult resident of Pennsylvania, and the Chief Financial Officer of Young.

2

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, because complete diversity exists among the parties and the amount in controversy exceeds $75,000.

11. This Court has specific personal jurisdiction over each of the Defendants because, as set forth herein, each of them has sufficient minimum contacts with the State of Maryland to satisfy the requirements of constitutional due process, and Atlantic Forest's claims arise out of Defendants' contacts with this State.

12. Venue is proper in this District and in this Court pursuant to §1391(a)(2) because a substantial part of the events giving rise to the cause of action arose in this District.

## FACTS COMMON TO ALL COUNTS

13. Young has been purchasing lumber from Atlantic Forest since December 1998.

14. When Young wished to purchase lumber, one of Young's purchasing agents would first obtain quotes from multiple different vendors, usually including Atlantic Forest.

15. Young's purchasing agent would present at least three quotes to Jeff Haggerty, an officer of Young.

16. Mr. Haggerty would take the quotes and discuss them with Kevin Doran, Young's Chief Financial Officer.

17. Messrs. Haggerty & Doran would decide which vendor Young would purchase from.

18. For orders on which Haggerty & Doran decided that Young would purchase from Atlantic Forest, a representative from Young placed an order by telephone with Atlantic Forest, providing Atlantic Forest with a purchase order number from Young.

19. An employee of Atlantic Forest then entered Young's order into Atlantic Forest's order processing system.

20. Atlantic Forest then generated an invoice, shipped Young's order, and mailed each invoice to Young, all in the ordinary course of Atlantic Forest's business.

21. Young's payment for each shipment was due to Atlantic Forest forty-five (45) days from the date of each invoice.

22. Throughout its history with Atlantic Forest, Young continued ordering lumber from Atlantic Forest in this way, Atlantic Forest delivered the lumber that Young ordered, and Young paid for the lumber that Atlantic Forest delivered.

23. On September 9, 2010, Young ordered lumber from Atlantic Forest again.

24. On September 14, 2010, Atlantic Forest shipped the lumber that Young had ordered on the 9th, and sent an invoice to Young.

25. Young accepted the lumber that Atlantic Forest delivered.

26. Young placed thirteen (13) additional orders for lumber with Atlantic Forest between September 9, 2010 and December 16, 2010.

27. Each time, Atlantic Forest delivered to Young the lumber that Young had ordered, and invoiced Young for the lumber delivered.

28. Each time, Young accepted the lumber that Atlantic Forest delivered (collectively, the "Lumber").

29. In late fall of 2010, Young's financial condition began to deteriorate.

30. When Young's financial condition began to deteriorate, Young's officers, including Mr. Haggerty, knew that Young's financial condition was deteriorating.

31. During this time, Mr. Haggerty directed Tyson Brumfield (another officer of Young) to call various suppliers, including Atlantic Forest, to check prices and to see which suppliers were willing to ship on credit.

32. Mr. Brumfield in fact obtained such information from Atlantic Forest.

33. Upon information and belief, Mr. Brumfield relayed to Mr. Haggerty and the other officers of Young the information that Mr. Brumfield received from Atlantic Forest.

34. During Young's financial decline, Messrs. Haggerty and Doran would determine which suppliers to purchase lumber from based in large part on whether the supplier would ship on credit at the time.

35. Upon information and belief, Young, acting through its officers, purchased lumber from Atlantic Forest *because* the officers knew that (a) Young could not pay for its purchases, and (b) Atlantic Forest would ship on credit.

5

36.     Young has not paid Atlantic Forest for the lumber that Young ordered on September 9 or for any of its subsequent orders.

37.     The invoices sent by Atlantic Forest to Young that remain unpaid (each an "Invoice," and collectively, the "Invoices") are attached hereto, in date order, as **Exhibits 1A-1N**, and incorporated herein by this reference.

38.     A summary of the Invoices is attached hereto as **Exhibit 2** and incorporated herein by this reference.

39.     On or about December 21, 2010, Russ Johnson, President of Atlantic Forest, received a call from Kevin Doran, CFO of Young.

40.     On this call, Mr. Doran advised Mr. Johnson that Young was ceasing operations and shutting its doors, and could not and would not pay its outstanding bills, including the Invoices.

41.     On December 23, 2010, Atlantic Forest (through counsel) wrote to Young and demanded the immediate return of all of the lumber that Young had accepted but not paid for.  A copy of this letter is attached hereto as **Exhibit 3** and incorporated herein by this reference.

42.     Young, through its Chief Financial Officer Mr. Doran, responded by electronic mail the same day, acknowledging that it had received the lumber, and had sold it to Young's customers.  A copy of this e-mail is attached hereto as **Exhibit 4** and incorporated herein by this reference.

43.     On December 29, 2010, Young wrote to Atlantic Forest, announcing that Young would be ". . . winding down its operations starting December 27, 2010." A copy of this letter (the "December 29 Letter") is attached hereto as **Exhibit 5** and incorporated herein by this reference.

44.     In the December 29 Letter, Young advises that: (a) it owes approximately $5 million to two of its secured creditors, (b) these secured creditors are both secured by all of Young's assets, (c) its secured debt exceeds the value of its assets, and (d) it does not anticipate paying anything to unsecured creditors.

45.     Young closes the December 29 Letter by announcing that it intends to liquidate its assets and dissolve, and that, subsequent to its liquidation and dissolution its secured creditors will be owed approximately $2.75 million.

46.     In the December 29 Letter, Young claims that it cannot pay its bills because of its debts to two secured lenders, the Wilmington Savings Fund Society, FSB ("WSFS") and Delaware Tri-State Lenders, LLC ("Tri-State").

47.     In the December 29 Letter, Young advises that (a) it owes WSFS approximately 1.85 million dollars, (b) it owes Tri-State approximately 3.1 million dollars, and (c) Young's debt to Tri-State was formerly owed to WSFS.

48.     Tri-State is a Delaware Limited Liability Company, formed on November 10, 2010.

49.     Tri-State is affiliated with and/or owned by the officers of Young.

50. On December 14, 2010, Young gave Tri-State a security interest in all of Young's personal property and the proceeds thereof.

51. Roughly two weeks later, Young had closed its doors and advised its suppliers, such as Atlantic Forest, that Young would not pay what it owed, because it could not.

52. Upon information and belief, Young, instead of paying creditors such as Atlantic Forest, gave its officers a security interest in all its assets, in an attempt to place those assets beyond the reach of creditors.

53. Young, by placing its orders with Atlantic Forest and accepting the goods that Atlantic Forest shipped, represented to Atlantic Forest that Young was willing and able to pay for such goods.

54. This representation was material to Atlantic Forest's decision to supply goods to Young.

55. This representation was false.

56. Young knew, or should have known, when it ordered and accepted goods from Atlantic Forest that it could not (or would not) pay for such goods.

57. As a result, Young knew, or should have known, that its representation to Atlantic Forest was false.

58. Young also failed to disclose to Atlantic Forest its unwillingness or inability to pay for the goods that it was ordering.

59. Young made its false representation, and failed to disclose its inability or unwillingness to pay, each with the purpose of defrauding Atlantic Forest.

60. Atlantic Forest reasonably relied to its detriment on Young's false representation, and on Young's failure to disclose its inability or unwillingness to pay.

61. As a direct and proximate result of its reasonable reliance on Young's false representation and non-disclosure, Atlantic Forest suffered damages.

## COUNT I – BREACH OF CONTRACT (Young)

62. Atlantic Forest incorporates the averments in paragraphs 1-61 into this paragraph as if each such averment was set forth in full herein.

63. Young and Atlantic Forest were parties to a binding contract, pursuant to which Atlantic Forest was obligated to fill orders placed with it by Young and Young was obligated to pay for the material delivered by Atlantic Forest.

64. Young materially breached its contract with Atlantic Forest by, *inter alia*, failing to pay for goods that Atlantic Forest delivered and Young accepted.

65. As a result of Young's material breaches of its contract with Atlantic Forest, Atlantic Forest has suffered damages in the amount of $103,253.57.

WHEREFORE Plaintiff Atlantic Forest Products LLC seeks judgment in its favor and against Defendant Wm. M. Young Co., LLC, jointly and severally with any judgment that may be entered against any other defendant in this action, for (A) compensatory damages in the amount of $103,253.57 or such other amount as may be proven at trial, (the "Principal Amount"), (B) pre-judgment interest on the Principal Amount at 6% *per*

*annum*, (C) post-judgment interest on the Principal Amount at 10% *per annum*, (D) the costs and fees associated with bringing this action, and (E) such other and further relief as the nature of its cause may require.

COUNT II – UNJUST ENRICHMENT (Young)

66. Atlantic Forest incorporates the averments in paragraphs 1-61 into this paragraph as if each such averment was set forth in full herein.

67. Atlantic Forest conferred a valuable benefit on Young.

68. Young knew of and appreciated the benefit conferred upon it by Atlantic Forest.

69. Young has accepted and retained the benefit conferred by Atlantic Forest under circumstances making the retention of that benefit inequitable without payment of its value.

70. The benefit conferred on Young by Atlantic Forest was worth at least $103,253.57 to Young.

WHEREFORE Plaintiff Atlantic Forest Products LLC seeks judgment in its favor and against Defendant Wm. M. Young Co., LLC, jointly and severally with any judgment that may be entered against any other defendant in this action, for (A) compensatory damages in the amount of $103,253.57, or such other amount as may be proven at trial, (the "Principal Amount"), (B) pre-judgment interest on the Principal Amount at 6% *per annum*, (C) post-judgment interest on the Principal Amount at 10% *per annum*, (D) the

costs and fees associated with bringing this action, and (E) such other and further relief as the nature of its cause may require.

### COUNT III – INTENTIONAL MISREPRESENTATION (Young)

71. Atlantic Forest incorporates the averments in paragraphs 1-61 into this paragraph as if each such averment was set forth in full herein.

72. Young, by placing its orders with Atlantic Forest and accepting the goods that Atlantic Forest shipped, represented to Atlantic Forest that Young was willing and able to pay for such goods.

73. This representation was material to Atlantic Forest's decision to supply goods to Young.

74. This representation was false.

75. Young knew, when it ordered and accepted goods from Atlantic Forest that it could not (or would not) pay for such goods.

76. As a result, Young knew that its representation to Atlantic Forest was false.

77. Young also failed to disclose to Atlantic Forest its unwillingness or inability to pay for the goods that it was ordering.

78. Young made its false representation, and failed to disclose its inability or unwillingness to pay, each with the purpose of defrauding Atlantic Forest.

79. Atlantic Forest reasonably relied to its detriment on Young's false representation, and on Young's failure to disclose its inability or unwillingness to pay.

11

80. As a direct and proximate result of its reasonable reliance on Young's false representation and non-disclosure, Atlantic Forest suffered damages.

WHEREFORE Plaintiff Atlantic Forest Products LLC seeks judgment in its favor and against Defendant Wm. M. Young Co., LLC, jointly and severally with any judgment that may be entered against any other defendant in this action, for (A) compensatory damages in the amount of $103,253.57 or such other amount as may be proven at trial, (the "Principal Amount"), (B) pre-judgment interest on the Principal Amount at 6% *per annum*, (C) post-judgment interest on the Principal Amount at 10% *per annum*, (D) the costs and fees associated with bringing this action, and (E) such other and further relief as the nature of its cause may require.

COUNT IV – NEGLIGENT MISREPRESENTATION (Young)

81. Atlantic Forest incorporates the averments in paragraphs 1-61 into this paragraph as if each such averment was set forth in full herein.

82. Young owed a duty to Atlantic Forest that required Young to (1) not order goods for which it knew it could not pay, (2) advise Atlantic Forest that Young could no longer pay for goods, and (3) refrain from representing to Atlantic Forest that it could and would pay for goods that it had ordered.

83. Young either knew or should have known that it could not pay for the goods that it ordered.

84. Young failed to disclose to Atlantic Forest that Young could not pay for goods that it had ordered, and in fact represented to Atlantic Forest that Young could and would pay for goods that it had ordered.

85. This representation was false.

86. Young negligently asserted this false representation to Atlantic Forest, and negligently failed to disclose to Young its inability to pay.

WHEREFORE Plaintiff Atlantic Forest Products LLC seeks judgment in its favor and against Defendant Wm. M. Young Co., LLC, jointly and severally with any judgment that may be entered against any other defendant in this action, for (A) compensatory damages in the amount of $103,253.57 or such other amount as may be proven at trial, (the "Principal Amount"), (B) pre-judgment interest on the Principal Amount at 6% *per annum*, (C) post-judgment interest on the Principal Amount at 10% *per annum*, (D) the costs and fees associated with bringing this action, and (E) such other and further relief as the nature of its cause may require.

## COUNT V – RECLAMATION OF GOODS UNDER THE UCC

87. Atlantic Forest incorporates the averments in paragraphs 1-61 into this paragraph as if each such averment was set forth in full herein.

88. Young was insolvent when Atlantic Forest delivered the Lumber to Young.

89. Atlantic Forest promptly and timely demanded return of the Lumber in writing.

90. When Young received Atlantic Forest's demand for return of the Lumber, the Lumber was identifiable and, upon information and belief, in Young's possession.

WHEREFORE Plaintiff Atlantic Forest Products LLC seeks judgment in its favor and against Defendant Wm. M. Young Co., LLC for the immediate return of all Lumber still in the possession of Defendant, such judgment to authorize the appropriate authority to enter any premises wherein such Lumber may be kept, using force if necessary, and return such Lumber to Plaintiff, with the costs of so doing assessed against Defendant.

## COUNT VI – INTENTIONAL MISREPRESENTATION
### (Messrs. Shea, Brumfield & Doran)

91. Atlantic Forest incorporates the averments in paragraphs 1-61 and 71-80 into this paragraph as if each such averment was set forth in full herein.

92. Each of Shea, Brumfield, and Doran is, or was at all times relevant hereto, a member and an officer of Young.

93. Each of Shea, Brumfield & Doran personally directed, participated, or cooperated in Young's defrauding of Atlantic Forest.

94. Each of them, at one time or another, either (a) personally placed orders with Atlantic Forest that they knew Young could not and would not pay for, or (b) directed employees of Young to place such orders with Atlantic Forest.

95. As a result, each of them is personally liable to Atlantic Forest for the damages caused by Young's (and their own individual) fraud.

WHEREFORE Plaintiff Atlantic Forest Products LLC seeks judgment in its favor and against Defendants Thomas Shea, Jr., Tyson Brumfield, and Kevin Doran, jointly

and severally with any judgment that may be entered against any other defendant in this action, for (A) compensatory damages in the amount of $103,253.57 or such other amount as may be proven at trial, (the "Principal Amount"), (B) pre-judgment interest on the Principal Amount at 6% *per annum*, (C) post-judgment interest on the Principal Amount at 10% *per annum*, (D) the costs and fees associated with bringing this action, and (E) such other and further relief as the nature of its cause may require.

COUNT VII – NEGLIGENT MISREPRESENTATION
(Messrs. Shea, Brumfield & Doran)

96. Atlantic Forest incorporates the averments in paragraphs 1-61 and 81-86 into this paragraph as if each such averment was set forth in full herein.

97. Each of Shea, Brumfield, and Doran is, or was at all times relevant hereto, a member or an officer of Young.

98. Each of Shea, Brumfield & Doran personally directed, participated, or cooperated in Young's negligent misrepresentation of material facts (including failure to disclose material facts) to Atlantic Forest.

99. Each of them, at one time or another, either (a) personally placed orders with Atlantic Forest that they knew or should have known Young could not and would not pay for, or (b) directed employees of Young to place such orders with Atlantic Forest.

100. As a result, each of them is personally liable to Atlantic Forest for the damages caused by Young's (and their own individual) negligent misrepresentations.

WHEREFORE Plaintiff Atlantic Forest Products LLC seeks judgment in its favor and against Defendants Thomas Shea, Jr., Tyson Brumfield, and Kevin Doran, jointly

and severally with any judgment that may be entered against any other defendant in this action, for (A) compensatory damages in the amount of $103,253.57 or such other amount as may be proven at trial, (the "Principal Amount"), (B) pre-judgment interest on the Principal Amount at 6% *per annum*, (C) post-judgment interest on the Principal Amount at 10% *per annum*, (D) the costs and fees associated with bringing this action, and (E) such other and further relief as the nature of its cause may require.

_____
Eliot M. Wagonheim (Fed. Bar No. 24287)
Michael J. Lentz (Fed. Bar No. 26097)
Catherine R. Lawrence (Fed. Bar No. 29608)
Wagonheim & Associates, LLC
303 International Circle, Suite 390
Hunt Valley, Maryland 21230
ewagonheim@wagonheim.com
mlentz@wagonheim.com
klawrence@wagonheim.com
Phone: (410) 584-1110
Fax: (410) 584-1120
*Attorneys for Plaintiff, Atlantic Forest Products, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the ____ day of April, a copy of the foregoing *First Amended Complaint* was sent via this Court's CM/ECF system to:

Lisa C. McLaughlin, Esq.
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, Delaware 19806
e-mail: lcm@pgslaw.com

I FURTHER CERTIFY that, on the same day, a courtesy copy of the same document was sent via electronic mail and first-class mail, postage pre-paid, to:

Steven R. Freeman, Esq.
Lacie B. Simpson, Esq.
Freeman, Wolfe & Greenbaum, P.A.
409 Washington Avenue, Suite 300
Towson, Maryland 21204
srf@fwglaw.com
lbs@fwglaw.com

_____
Michael J. Lentz